IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CALVIN L. MERRITTE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12 C 6933 |
| | ) | |
| COUNTY OF LASALLE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendants' motions for summary judgment and motion to strike. For the reasons stated below, the motions for summary judgment are granted and the motion to strike is denied.

**BACKGROUND**

Plaintiff Calvin Merritte (Merritte) is a convicted felon and is currently incarcerated in an Illinois Department of Corrections facility. On September 16, 2010, Merritte was temporarily transferred to the LaSalle County Jail (Jail), while he attended certain civil court proceedings unrelated to his felony convictions. Merritte remained at the Jail for six days until September 22, 2010. Merritte claims that he was denied access in the Jail to certain prescription medication, and that he suffered

allergic reactions while in the Jail that resulted in hives. Merritte also contends that he filed grievances relating to his allergic reactions and that Defendants failed to respond to the grievances. Merritte further contends that he was placed in segregation at the Jail, was denied access to legal materials, and was unable to make copies. Merritte filed a *pro se* amended complaint in this action and seeks to bring federal constitutional claims pursuant to 42 U.S.C. § 1983 (Section 1983). Merritte names as Defendants the County of LaSalle, Thomas Templeton, Shelley Kessler, James Fultz, Jason Edgcomb, and Karen Edgcomb (collectively referred to as "County Defendants"). Merritte also names as Defendants Correctional Healthcare Companies, Inc. (CHC), Synthia Peterson (Peterson), Diane Strack (Strack), Tina Craig (Craig), and Virginia Black (Black) (collectively referred to as "CHC Defendants"). County Defendants and CHC Defendants now move for summary judgment on all claims. CHC Defendants also move to strike Merritte's response to their motion for summary judgment. The record reflects that Merritte was provided with a *pro se* summary judgment notice consistent with Local Rule 56.2.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009). A "genuine issue" of material fact in the context of a motion for summary judgment is

2

not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). In ruling on a motion for summary judgment, the court must consider the record as a whole, in the light most favorable to the non-moving party, and draw all reasonable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

I. CHC Defendants' Motion to Strike

CHC Defendants move to strike Merritte's response to their motion for summary judgment. CHC Defendants argue that Merritte's response significantly exceeds the page limits for such a brief and that Merritte did not seek leave of court for such an oversized brief. Merritte is proceeding *pro se* in this case and although he is still bound by the rules of this court, the court, in its discretion, will allow Merritte to present the additional pages for his response since Merritte is not represented by counsel. Therefore, CHC Defendants' motion to strike is denied. The court also notes that Merritte has made a variety of filings in this case opposing Defendants' motions for summary judgment. The court has fully considered all such

3

filings made by Merritte in ruling on the instant motions.

II. CHC Defendants' Motion for Summary Judgment

CHC Defendants move for summary judgment on all claims brought against them. For a deliberate indifference claim, a plaintiff "must satisfy two elements, one objective and one subjective." *McGee v. Adams*, 721 F.3d 474, 480-81 (7th Cir. 2013)(explaining that the objective element requires the plaintiff to "present evidence supporting the conclusion that he had an objectively serious medical need")(internal quotations omitted)(quoting *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012)). The "deliberate indifference to serious medical needs of prisoners," violates the Eighth Amendment prohibition against "cruel and unusual punishment. . . ." *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010)(stating that "[a] delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain"). However, mere negligence, "even gross negligence, does not violate the Constitution." *Id.*

   A. Serious Medical Need

CHC Defendants argue that there is not sufficient evidence that shows that Merritte was suffering from a serious medical need during the relevant six-day period. A serious medical need is defined as a medical need "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Foelker v.*

4

*Outagamie County*, 394 F.3d 510, 512-13 (7th Cir. 2005)(quoting *Jackson v. Illinois Medi-Car, Inc.*, 300 F.3d 760, 765 (7th Cir. 2002)); *Freeman v. Quinn*, 2010 WL 2402917, at *2 (S.D. Ill. 2010)(stating that "[i]n attempting to define 'serious medical needs,' the Seventh Circuit has held that they encompass not only conditions that are life threatening or that carry risks of permanent, serious impairment if left untreated, but also those in which the deliberately indifferent withholding of medical care results in needless pain and suffering").

Merritte contends that beginning on September 16, 2010, and through September 20, 2010, he was suffering "severe allergic reactions" for what Merritte claims is a "life threatening chronic problem," and that he had "difficulty breathing, lip and face swellings, and hives covering his entire body. . . ." (R MDSF Med. Tr. Par. 16); (DE 99: 6); (DE 9 Par. 30). Although Merritte contends that his "life threatening severe allergic" reactions that began on September 16, 2010, were "self-reported" by Merritte, the Sick Call Request Forms submitted by Merritte during the time in question indicate no such condition. (DE 99: 6). The undisputed record shows that on September 16, 2010, Merritte submitted a Sick Call Request Form (9/16 Form). (9/16/10 Form). Although Merritte now claims that he was suffering from a severe allergic reaction at that point, he failed to provide any such information on the 9/16 Form on the lines that were provided for him to explain the reason for his request. (9/16/10 Form). Also, although Merritte claims he was suffering from a life-threatening condition, he requested on the form only Benadryl and Tylenol. (9/16/10 Form). Nor did Merritte check the boxes on the 9/16 Form indicating that

5

he wanted to be seen by a nurse or doctor. (9/16/10 Form 1).

The undisputed facts show that on September 17, 2010, Merritte again submitted a Sick Call Request Form (9/17 Form). Although Merritte now claims he had been suffering from a severe allergic reaction since September 16, 2010, Merritte again failed to make any mention of it on the 9/17 Form. (9/17/10 Form). Instead, Merritte only complained about back pain, which he believed was caused by a thin mattress. (9/17/10). The undisputed facts show that on September 18, 2010, Merritte again submitted a Sick Call Request Form (9/18 Form). Although Merritte claims that at that time he was suffering from a potentially life threatening condition, he listed on the form only "rash, itching." (9/18/10 Form). On the 9/18 Form, Merritte did not check the boxes requesting to see a nurse or doctor and only requested over-the-counter medicine. (9/18/10 Form). It was not until September 20, 2010, that Merritte finally submitted a Sick Call Request Form (9/20 Form) on which he referenced what he believed to be an allergic reaction, and even then he merely requested over-the-counter medications and did not request to see a nurse or doctor on the form. (9/29/10 Form). Thus, Merritte's ad hoc version of his symptoms is inconsistent with his own actions as seen in the documentary evidence in this case.

The record reflects that Merritte was initially seen by Strack, a nurse at the Jail, on September 18, 2010, relating to the 9/17 Form, on which Merritte complained of back pain. (9/17 Form); (MDSF Par. 23). Strack indicates that during that examination, she observed no evidence of an allergic reaction. (Strack Aff. Par.

2). The record also reflects that on September 18, 2010, Tina Craig (Craig), a nurse at the Jail, examined Merritte relating to the 9/18 Form, on which Merritte complained about a rash and itching. (P. Dep. 120); (R MDSF Nurse C Par. 29). The record also reflects that Craig examined Merritte and found a "scattered rash," and "bumps" on his arms that did not appear to be hives, and "were in no way serious." (P. Dep. 123-26); (Craig Aff. Par. 3-4). The record also reflects that Craig offered Merritte ice to treat his itching and Merritte refused. (Craig Aff. Par. 4). Merritte contends that he believes that he was not "adequately assessed," but offers no evidence to discount the evidence in the record that shows that Craig visually examined Merritte. (P Dep. 122). Merritte contends that he feared that his throat would swell up and he would die, but offers no evidence showing that he faced any such medical risk due to the rash or that his subjective fears were reasonable. (P Dep. 122). Merritte fails to point to sufficient evidence that he had any of the symptoms that would indicate a severe medical need. The court notes that at the summary judgment stage, the court does not become the trier of fact and make credibility assessments. *Williams v. City of Chicago*, 733 F.3d 749, 752 (7th Cir. 2013). However, Merritte must still point to sufficient evidence to show that a reasonable trier of fact could find in his favor. Fed. R. Civ. P. 56; *Anderson*, 477 U.S. at 248. Merritte has failed to do so.

Merritte also contends that his claims are supported by the fact that Black, another nurse at the Jail, ultimately found that Merritte was suffering from some sort of an allergic reaction. (R MDSF M Tr. Par. 19). However, the record indicates that

7

Black did not even see Merritte until September 20, 2010. Thus, Black's assessments fail to support Merritte's claims that he suffered "from September 16, 2010 - September 20, 2010, five (5) days, where the severe allergic reactions were assessed and medical professionals refused to address it." (R MDSF Med. Tr. Par. 16).

The undisputed facts also show that although Merritte contends that he was suffering from various symptoms relating to what he believed was an allergic reaction, Merritte was able to talk, use the phone, eat his meals, watch television, take showers, read books, and meet with other persons. (P Dep. 86-91, 168-174). Merritte has thus failed to point to sufficient evidence to show that he was suffering from a serious medical need. The court also notes that due to the extreme short duration of Merritte's stay at the Jail, it is doubtful that a reasonable trier of fact could conclude that his rash could constitute a serious medical need.

### B. Deliberately Indifferent

CHC Defendants also argue that even if Merritte was suffering from a serious medical need, he has failed to point to evidence to show that CHC Defendants were deliberately indifferent to such needs. The Seventh Circuit has explained that as to the subjective element of a deliberate indifference claim, "[d]eliberate indifference is more than negligence and approaches intentional wrongdoing," and that "[t]o establish deliberate indifference, [the plaintiff] must meet essentially a criminal recklessness standard, that is, ignoring a known risk." *McGee*, 721 F.3d at 480-

81(internal quotations omitted)(quoting *Collignon v. Milwaukee Cnty.*, 163 F.3d 982, 988 (7th Cir. 1998)). Even a showing that the state actors engaged in gross negligence "is insufficient to impose constitutional liability on" such actors. *Id.*

In the instant action, the undisputed facts show that Merritte in his relatively short time at the jail continually filed Sick Call Request Forms for various alleged discomforts that he claimed to suffer. The undisputed facts also show that only once on his Sick Call Request Forms did he request to see a nurse or doctor and that request related to his back pain. (9/17/10 Form). The record shows that the Jail provided medical professionals to address each of Merritte's concerns and that in the course of four days he was examined by three different nurses and that in the interim his condition was monitored. (MDSF Par. 23, 25, 29, 37, 43, 44). Merritte has also failed to point to evidence to dispute the fact that on three of the four instances when Merritte was examined by a nurse, the nurse called the Jail physician for orders. (Strack Aff. Par. 3-4); (Black Aff. 4-5). The record also reflects that in response to Merritte's requests he was provided with Ibuprofen and Benadryl. (R MDSF Par. 9 /18 27, 42). The undisputed facts also show that on September 18, 2010, Craig offered Merritte ice to treat his alleged itchy skin and that Merritte "refused to use the ice." (R MDSF Par. 34); (9/18 Form). Thus, Merritte refused to accept the treatment that was made available to him to ease any alleged ailment, which he now contends was severe. The record indicates that on September 20, 2010, Black examined Merritte and found symptoms that indicated that Merritte was suffering a "minor allergic reaction" and that Merritte was given Benadryl. (Black Aff Par. 6,

9

8). The record also reflects that on September 22, 2010, Black examined Merritte again and observed what she believed were hives and Merritte was given Benadryl. (Black Aff. Par. 6, 8). Black indicates that Merritte "was always able to talk, was fully ambulatory, and showed no signs or symptoms beyond a simple skin rash." (Black Aff. Par. 9). Thus, Merritte has failed to point to sufficient evidence to support his assertions that he had been suffering from hives and a severe allergic reaction since September 16, 2010, and was left untreated.

Merritte has not pointed to any evidence that would indicate that CHC Defendants' actions or inaction would even rise to the level of negligent conduct much less deliberately indifferent conduct. In addition, although Merritte testified at his deposition that he believed that the medical professionals treating him erred in their examinations, he has pointed to no medical support or objective evidence to draw into question the wisdom of such examinations. *See McGee*, 721 F.3d at 481 (explaining that medical professionals are "entitled to deference in treatment decisions unless no minimally competent professional would have so responded under [the] circumstances at issue")(internal quotations omitted)(quoting *Sain v. Wood*, 512 F.3d 886, 894-95 (7th Cir. 2008)). The undisputed facts reflect a consistent response to treat Merritte's alleged various health complaints, that Merritte refused to accept the prescribed treatment options, and that Merritte either failed to properly inform Jail employees about his alleged symptoms or they were not as severe as Merritte now claims. Nor has Merritte pointed to evidence indicating why other individuals such as Peterson, the Contract Manager for CHC, was personally

10

involved in his alleged constitutional deprivations or deliberately indifferent to his needs. In fact, when asked at his deposition about Peterson, Merritte, indicated confusion as to the facts he was alleging in this case and tried to justify his confusion by stating that he did not have his notes with him. In fact, he explained that he was confused because "this is not the only pending case" he is pursuing. (P. Dep. 128-29).

Finally, Merritte claims in response to the instant motion that he was denied prescription medication for his alleged allergy. Specifically, Merritte contends that he had been prescribed Chlorpheniramine for his alleged allergies and that he was denied access to such medication. (DE 99: 1-7). However, nowhere in Merritte's Sick Call Request Forms did he even mention Chlorpheniramine much less request it. The record is devoid of any reliable information to show that Merritte was denied access to such medication at the Jail. Although Merritte claims that the Jail officials took his medication away from him when he arrived at the Jail, no evidence has been submitted to substantiate such allegations, and even if that were true, nothing prevented Merritte from requesting such medication on his Sick Call Request Forms. The record shows that Merritte was aware of the medication request procedure and in fact requested other types of medications from CHC Defendants while at the Jail. Merritte has not pointed to sufficient evidence to show that the CHC Defendants were aware of any known risk to Merritte's health or that there was any unreasonable delay in treatment of even a minor health issue that resulted in needless pain or suffering. Based on the above, Merritte has not pointed to sufficient evidence to

11

show that CHC Defendants were deliberately indifferent to Merritte's alleged serious medical needs. Therefore, CHC Defendants' motion for summary judgment is granted.

III. County Defendants' Motion for Summary Judgment

County Defendants move for summary judgment on all claims.

A. Medical Treatment

As explained above in regard to CHC Defendants' motion, the undisputed facts show that, during his stay at the Jail, Merritte was provided with continual medical care in response to his requests and that such providers were not deliberately indifferent to Merritte's medical needs. Merritte has not pointed to any evidence that would otherwise subject any of County Defendants to liability for any separate conduct relating to the medical treatment of Merritte.

B. Segregation

Merritte contends that his constitutional rights were violated because he was placed in segregation at the Jail. (DE 9: Par. 28). A prisoner's "liberty interest in avoiding segregation is limited." *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013); *see also Earl v. Racine County Jail*, 718 F.3d 689, 691 (7th Cir. 2013)(stating that "[w]hen an inmate is placed in conditions more restrictive than those in the general prison population, whether through protective segregation like

suicide watch or discretionary administrative segregation, his liberty is affected only if the more restrictive conditions are particularly harsh compared to ordinary prison life or if he remains subject to those conditions for a significantly long time"). The Seventh Circuit has indicated that in evaluating whether segregation violates a prisoner's constitutional rights, the court should consider the length of the segregation and whether the prisoner was subjected to "exceptionally harsh conditions. . . ." *Hardaway*, 734 F.3d at 743. In the instant action, the undisputed facts show that Merritte was at the Jail for only six days. (R MDSF M Tr. Par. 16). As explained above, although Merritte now claims to have been suffering from a life threatening condition, the undisputed facts show that he was not experiencing any serious medical problem, that medical professionals addressed his requests, and that he was properly treated by medical professionals. County Defendants also point out that Merritte was properly placed in segregation due to his relatively short stay of less than one week at the Jail in accordance with the county Jail standards. Thus, Merritte has failed to point to sufficient evidence to show that his segregation violated his constitutional rights.

### C. Access to Courts and Copies

Merritte also contends that his constitutional rights were violated because, according to Merritte, he was denied access to the courts and was unable to make copies. Merritte contends that the Jail "had no law library or any form of legal assistance that provided copies . . . ." (DE 9: Par. 53). Prisoners retain a

13

constitutional "right of access to the courts" and "state actors must respect that right by not impeding prisoners' efforts to pursue legal claims." *Ortiz v. Downey*, 561 F.3d 664, 671 (7th Cir. 2009). In the instant action, it is undisputed that Merritte was transferred to the Jail for only a short duration of less than one week for a matter in which he was represented by counsel. Merritte has not provided any reliable evidence to substantiate his claims that he suffered any legal prejudice as a result of his short stay at the Jail. Although Merritte has referred to other civil cases he had pending, and contends that he had to work on "other grievances that were not germane to" the matter for which he was transferred to the Jail, Merritte, has not pointed to sufficient evidence that shows that his short stay at the Jail or the alleged lack of any legal resources or access to copies materially impacted any other litigation that Merritte was pursuing. (DE 9: Par. 53). Merritte also contends that Defendants failed to respond to grievances filed against employees at the Jail, that somehow resulted in Merritte "forfeiting his right to appeal" and prevented him from pursuing negligence claims in state court. (DE 9: Par. 38, 51-52). However, Merritte fails to point to any reliable evidence to explain or support such allegations. Thus, Merritte has failed to point to sufficient evidence to show that his constitutional rights were violated due to a denial of access to the courts and copies. The court also notes that in Merritte's initial complaint, he complained about the limited use of the telephone, but Merritte has not pointed to sufficient evidence to show that the limitation of such privileges during a short stay at the Jail for less than one week rose to the level of a constitutional deprivation.

The evidence shows that Merritte, a *pro se* litigant, is fairly sophisticated and has been exposed to the legal system. The evidence also reflects that Merritte has attempted to raise meritless and unsubstantiated claims relating to alleged violations of his constitutional rights during a temporary stay of a period of less than one week at the Jail.

A review of the entire record in this case, shows that there are no material genuinely disputed facts and that there is not sufficient evidence that shows that any of County Defendants violated any of Merritte's constitutional rights. Based on the evidence, no reasonable trier of fact could find for Merritte on any of his claims. Therefore, County Defendants' motion for summary judgment is granted.

## CONCLUSION

Based on the foregoing analysis, Defendants' motions for summary judgment are granted, and CHC Defendants' motion to strike is denied.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: March 13, 2014